UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENNIS ROGER BOLZE, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 17-2858 (FYP) |
| ) | |
| EXECUTIVE OFFICE FOR UNITED ) | |
| STATES ATTORNEYS, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Dennis Roger Bolze, *pro se* and *in forma pauperis*, seeks documents seized by the government in connection with his arrest on criminal charges in 2009; he relies on the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a. After locating all of the documents requested and producing 4,939 pages of documents, Defendants now move for summary judgment, ECF No. 30 (Defendants' Motion). In response, Plaintiff has filed a combined opposition and cross-motion for summary judgment, ECF No. 32 (Plaintiff's Motion). After carefully reviewing the papers and the record, the Court determines that Defendants conducted adequate searches in response to Plaintiff's requests. Plaintiff has declined to challenge any withholdings of information under statutory exemptions. Therefore, the Court will grant Defendants' motion for summary judgment, and will deny Plaintiff's cross-motion for summary judgment. For the reasons explained below, the Court also will deny Plaintiff's motion for reimbursement of costs, ECF No. 36.

1

## BACKGROUND

Plaintiff Bolze is a federal prisoner at the Coleman Low Federal Correctional Institution, in Wildwood, Florida.  *See* ECF No. 1 (Complaint) at 1.  He is serving a sentence for wire fraud and money laundering, following his conviction in November 2009.  *See United States v. Bolze*, No. 3:09-CR-93 (E.D. Tenn. filed Jul. 21, 2009), at ECF Nos. 42, 43 (Plea Hearing & Agreement).

In this matter, Bolze is suing the United States Department of Justice ("DOJ"), Executive Office for United States Attorneys ("EOUSA"), and the Federal Bureau of Investigation ("FBI"), seeking materials related to his criminal case.  After unsuccessfully submitting a request for information that was denied,[1] Bolze resubmitted his request on May 12, 2019, to two components of the DOJ: (1) the Criminal Division, and (2) the United States Attorney's Office for the Eastern District of Tennessee ("USAO-EDTN").  *See* Compl. at 7; Def. Mot. Ex. 1, ECF No. 30-3 (Declaration of David M. Hardy), ¶ 6.  His two, identical requests relied on the FOIA and the PA, and sought the following records:

> ALL "paper documents" seized during the arrest of Dennis Roger Bolze on or about March 12, 2009 at 1323 Torbert Lane located in Jersey Shore, Pennsylvania.  The arrest followed an investigation (#1000223344) and the filing of a criminal complaint in the United States District Court for the Eastern District of Tennessee on March 3, 2009[.]

*See* Hardy Decl., ¶ 6; Comp. Appx. at 016, 022–023.[2]

---

[1]      Bolze initially requested these materials from the Office of the Attorney General ("OAG") FOIA/PA Compliance Division, the DOJ Criminal Division, and the United States Attorney's Office for the Eastern District of Tennessee.  *See* Compl. at 1, 6, 7, 11; ECF No. 1-1 (Complaint Appendix), at 037–039.  The first request was dated April 20, 2017.  *See* Compl. at 6; Compl. Appx. at 001–006.  DOJ responded on May 3, 2017, returning the request and indicating that it was unable to process it because (1) Bolze had not satisfied certain PA requirements, and (2) it was sent to the wrong DOJ components.  *See* Compl. at 6; Compl. Appx. at 008–015.

[2]      Within the requests, Bolze further defined "paper documents" as

## I.    FBI (Request No. 1380477-000)

On July 20, 2017, the Criminal Division acknowledged receipt of Bolze's request.  *See* Compl. at 10; Compl. Appx. at 037.  The Criminal Division, however, indicated that the records sought were maintained by other components of the DOJ, and routed the request to the FBI for processing.  *See* Compl. at 11; Compl. Appx. at 037–039.  On July 26, 2017, the FBI acknowledged the request and assigned it Request No. 1380477-000.  *See* Hardy Decl., ¶ 8; Hardy Ex. B.

On October 4, 2017, the FBI acknowledged its possession of 2,303 pages of potentially responsive records and afforded Bolze an opportunity to narrow the scope of the request.  *See* Hardy Decl., ¶ 9; Hardy Ex. C.  On October 5, 2017, Bolze responded to the FBI with a certified letter, documenting his concern about the pace of the FBI's processing of his request.  *See* Hardy Decl., ¶ 10; Hardy Ex. D.  On October 12, 2017, Bolze sent another letter attesting to his willingness to pay processing fees up to $125.00, requesting paper format, and narrowing the

---

(A). ALL correscpondences [sic] and/or letters including any envelopes with the registered mailings receipts, certified mailing receipts attached and return receipts cards, any overnight mailing recipts [sic]; and

(B). In addition, ALL notes (whether hand-written or types), faxes and/or emails, and directives, opinions, orders, and/or reports (by whatever name they may be called). Any complaints or engagement letters, forms, and/or petitions.  Any correscpondences [sic] between any law firms and Dennis R. Baize, Centurion Asset. Management, and/or Advanced Trading Services.  Any correspondences or inquiries from and to any government agencies either Federal or State.  Any correscpondences [sic] or inquiries from and to any government agencies and Michael Potter, a resident agent of Centurion Asset Management and/or Advanced Trading Services.

(C). Finally, ALL "paper documents" from any banking transactions for Advanced Trading Services, Inc. ("A TS") and Centurion Asset Management, Inc. ("CAM") including their monthly banking statement and any enclosures including canceled checks (both front and back)[.]

*See* Hardy Decl., ¶ 7; Comp. Appx. at 016–017.

3

scope of his request.  *See* Compl. Appx. at 051–054; Hardy Decl., ¶ 11; Hardy Ex. E.  More

specifically, he indicated that he still sought copies of all bank statements for Centurion Asset

Management but no longer sought copies of any canceled checks.  *Id.*

On November 22, 2017, Bolze appealed the FBI's lack of timely response.  *See* Hardy

Decl., ¶ 12; Hardy Ex. F.  On December 6, 2017, the Office of Information Policy ("OIP")

acknowledged receipt of the appeal.[3]  *See* Hardy Decl., ¶ 13; Hardy Ex. G.  Bolze then

filed the instant lawsuit on December 28, 2017.

The FBI conducted a search that was successful in locating the requested material.  *See*

Hardy Decl., ¶ 56 ("[T]he FBI located the material it seized during Plaintiff's arrest on March

12, 2009.").  On February 7, 2018, the FBI sent a letter advising Bolze that it had located

approximately 6,003 pages of potentially responsive records.  *See* Hardy Decl., ¶ 15; Hardy Ex.

H; ECF No. 11-1 (Plaintiff's Supplement to Complaint) at Ex. A.  Bolze did not understand why

the number of potentially responsive pages had increased nearly three-fold, *see* Compl. Supp. at

2–3, particularly after he had attempted to narrow the search parameters, *see* Compl. Appx. at

051–054.  It appears that the FBI failed to acknowledge or respond to his prior attempt to narrow

the scope of the search.  On February 14, 2018, Bolze sent a letter memorializing his concerns.

*See* Hardy Decl., ¶ 16; Hardy Ex. I.

Beginning in July 2018, the FBI produced records to Bolze monthly, in sets of

approximately 500 pages per month.  *See* Hardy Decl., ¶¶ 21–37.  To allow maximum

disclosure, the records were processed only under FOIA and not pursuant to the PA, *see* Hardy

---

[3]       The OIP assigned the appeal No. DOJ-AP-2018-001316.  *See* Hardy Decl., ¶ 13.  On April 5, 2018, OIP
responded with an update regarding Bolze's appeal.  *See* Hardy Decl., ¶ 20; Hardy Ex. M.  OIP advised that (1) his
request was currently being actively processed by the FBI, and (2) there could be no action for appellate
consideration because the agency had not yet rendered any adverse determination.  *Id.*

Decl., ¶ 62,[4] and all redactions and withholdings were made pursuant to FOIA Exemptions 6 and

7(C).  *See id.*, ¶ 75; 5 U.S.C. § 552(b)(6); 5 U.S.C. § 552(b)(7)(C).[5]  In total, the FBI processed

5,940 responsive pages.  *See* Hardy Decl., ¶¶ 5, 41, 78.  Of these pages, 2,839 were released in

full; 2,100 were released in part; and 1,001 were withheld in full.  *Id.*, ¶ 5.  Of the 4,939 pages

released in full or in part, Bolze claims that 2,700 pages were non-responsive, *see* Pl. Mot. at 15;

but this means that the FBI produced over 2,000 pages that were concededly responsive, *see*

Hardy Decl., ¶¶ 56, 78.  In total, the FBI made 14 releases of information to Bolze, between July

2, 2018, and September 11, 2019.  *See id.*, ¶¶ 21–37.  On November 12, 2018, Bolze requested

that, going forward, the FBI process only a portion of the remaining responsive records, "Bates

Nos. 5,803–6,303."  *Id.*, ¶ 26; Hardy Ex. S.  It appears, however, that the FBI did not limit its

search, as requested by Bolze.

## II.    EOUSA & USAO-EDTN

Bolze resubmitted his request to the USAO-EDTN on May 12, 2017.  *See* Def. Mot. Ex.

2, ECF No. 30-4 (Declaration of Kitty Watson, Dec. 9, 2013), ¶ 3; Watson Ex. A.  On May 24,

---

[4]      Privacy Act Exemption (j)(2) protects from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal law, including police efforts to prevent, control, or reduce crime or to apprehend criminals."  *See* 5 U.S.C. § 552a(j)(2).  Agencies may promulgate rules to exempt systems from provisions of the PA.  *See* 5 U.S.C. § 552a(d), (j), (k).  DOJ promulgated regulation 28 C.F.R. § 16.96(a)(1), which exempts FBI law enforcement records maintained in the CRS.  The FBI contends that because the records responsive to Bolze's request were generated in the furtherance of the FBI's law enforcement duties and are maintained in the CRS, they are exempt under PA Exemption (j)(2).  *See* Hardy Decl., ¶¶ 59–61.  Hardy avers, however, that none of the records was withheld under the PA.  Because the records were also processed under the FOIA to achieve maximum disclosure, "the records identified as exempt under Privacy Act Exemption (j)(2) were processed and released to Plaintiff subject only to the FOIA exemptions;" and "[n]one of the information exempt from disclosure under the Privacy Act has been withheld from Plaintiff unless it was withheld under a FOIA exemption.  *Id.*, ¶ 62.  Therefore, PA Exemption (j)(2) is rendered inapplicable to any of the withholdings.

[5]      FOIA Exemption 6 exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  *See* 5 U.S.C. § 552(b)(6).  FOIA Exemption 7(C) exempts "records or information complied for law enforcement purposes . . . to the extend that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *See* 5 U.S.C. § 552(b)(7)(C).

2017, USAO-EDTN acknowledged the request, but indicated that "pursuant to the policies and practices of the United States Department of Justice[,]" it was required to forward it to the EOUSA for processing.  *See* Compl. at 7; Compl. Appx. at 028.

On June 9, 2017, with no word from the EOUSA, Bolze resubmitted his request directly to the EOUSA.  *See* Compl. at 7; Appx. at 029.[6]  On June 28, 2017, the EOUSA and the USAO-EDTN determined that the USAO-EDTN was the appropriate component to conduct the search.  *See* Watson Decl., ¶ 2.  On May 23, 2018, after the search was conducted, a final response letter was issued, indicating that the agency was not in possession of any of the requested documents.  *Id.*, ¶ 9; Watson Ex. C.

## STANDARD OF REVIEW

In a FOIA case, a district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action."  *See* 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal

---

[6]     On June 29, 2017, the EOUSA acknowledged receipt of the request, and informed Bolze that he could potentially reduce fees by narrowing it.  *See* Compl. at 8; Compl. Appx. at 031–032.  Bolze responded on July 6, 2017, electing to narrow his request.  *See* Compl. at 8; Compl. Appx. at 034–035.  He indicated that "[w]hen [he] was arrested, there [were] a very limited number of documents seized by agents. There were also a number of monthly bank statements located in the plastic bin . . . [he] only need[ed] the statements and not a copy of any checks."  *See* Compl. Appx. at 034; *see also id.* at 035 (reiterating that he wanted to exclude "all copies of the front and back of any canceled banking checks.").

6

quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable factfinder could find for the non-moving party; a fact is "material" only if it can affect the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" for summary judgment to be inappropriate.  *Weisberg v. DOJ*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980) (internal quotation marks omitted).  In assessing a defendant's motion, though, a court must "view the facts and draw reasonable inferences in the light most favorable to plaintiff."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

In FOIA cases, "[s]ummary judgment may be granted on the basis of agency affidavits[,]" when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)).  Agency declarations are afforded a "presumption of good faith" and can be rebutted only with evidence that the agency did not act in good faith.  *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).  A plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims[.]"  *SafeCard*

*Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## ANALYSIS

### I.   Defendants' Searches Were Adequate.

Bolze challenges the adequacy of the FBI's search.  *See* Pl. Mot. at 3–16.  Although he does not directly challenge the sufficiency of the USAO-EDTN's search, he appears to question the good faith of the USAO-EDTN and the EOUSA.  *See* Pl. Reply at 6–9, 14, 18–20.  For that reason, and because Defendants bear the initial burden of showing that their searches were adequate on a motion for summary judgment, *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), the Court will address the searches conducted by both the FBI and the USAO-EDTN.

The adequacy of an agency's search is measured by a standard of reasonableness under the attendant circumstances.  *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). To satisfy its burden, the agency must show that it "has conducted a search reasonably calculated to uncover all relevant documents."  *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  It may base its showing on affidavits or declarations submitted in good faith, *see Truitt*, 897 F.2d at 542, provided that these affidavits or declarations explain in reasonable detail the scope and method of the search, *see Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (citations omitted).  "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance[.]"  *North v. DOJ*, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)).  Agencies must show that their searches for responsive records "us[ed] methods which can be reasonably expected to produce the

information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998).  Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search.  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citation omitted).  When a defendant has made a *prima facie* showing of adequacy, the burden shifts to plaintiff to provide "sufficient evidence to raise 'substantial doubt' concerning the adequacy of the [agency's] search."  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (citation omitted).

For reasons explained below, Bolze has not identified any basis to conclude that the searches were inadequate; and he has failed to present evidence to overcome the presumption of good faith afforded to agency declarations.  *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) ("[I]t is well settled that conclusory allegations unsupported by factual data will not create a triable issue of fact.") (internal quotation marks and citation omitted).

   a.   *FBI's Search*

As an initial matter, the FBI unequivocally asserts that it located the documents requested by Bolze — *i.e.,* "the material it seized during Plaintiff's arrest on March 12, 2009" — by conducting an "index search" of its Central Records System ("CRS").  *See* Hardy Decl., ¶ 56.  The CRS is "an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions."  *Id.*, ¶ 44.  Furthermore, "[t]he CRS is indexed in a manner which meets the FBI's investigative needs and priorities, and allows FBI personnel to

9

reasonably and adequately locate pertinent files in the performance of their law enforcement duties." *Id.*, ¶ 46.  In light of the FBI's success in retrieving from the CRS all of the information that Bolze requested, his arguments challenging the adequacy of the agency's search are difficult to support.

                 1.   Sufficiency of the Hardy Declaration

The FBI relies on the affidavit of David M. Hardy, the Section Chief of the Record/Information Dissemination Section Records Management Division, to justify the adequacy of its search for records.[7]  *See* Hardy Decl., ¶¶ 1–2.  Bolze argues that Hardy's declaration is insufficient because it lacks "specificity and clarity."  *See* Pl. Mot. at 6.  Bolze contends that the declaration should have included information about "'who' seized the documents, 'who' secured the documents, 'who' physically took possession of the documents, 'who' pe[r]formed an investigative review of the documents, 'who' prepared summary materials for the prosecutor, and 'who' would have physically stored the documents pending potential appellate review and possible remand[.]" *Id.* at 4–5.[8]

The additional information requested by Bolze need not be included in a declaration filed to support the adequacy of a FOIA search.  Federal Rule of Civil Procedure 56(c) provides that a declaration "must be made on personal knowledge, set out facts that would be admissible in

---

[7]     Hardy supervises "twelve (12) FBI Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA[.]"  *See* Hardy Decl., ¶ 2.

[8]     Bolze also seeks information regarding the treatment and storage of exculpatory information that was used *during* his prosecution and post-conviction proceedings, and attempts to litigate issues under *Brady v. Maryland*, 373 U.S. 83 (1963).  *See* Pl. Mot at 4–5; Pl. Reply at 14–16.  This type of information is not ordinarily disclosed through FOIA because the statute is "not a substitute for discovery rules which govern civil and criminal litigation where 'different considerations' are at issue."  *Clay v. DOJ*, 680 F. Supp. 2d 239, 248 (D.D.C. 2010) (quoting *Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009)).

evidence, and show that the [declarant] is competent to testify on the matters stated." *See* Fed. R. Civ. P. 56(c)(4).  "A declarant in a FOIA case satisfies the personal knowledge requirement in [Rule 56(c)] if in his declaration, [he] attests to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question." *Barnard v. DHS*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) (internal quotation marks and citations omitted). Further, affiants are not required to personally conduct the search for records, *id.* (citation omitted); it is suitable for an affiant to submit information from third parties acquired in the course of performing official duties. *Barnard v. DHS*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009) (collecting cases).  The FOIA does not demand that an agency set forth "meticulous documentation of the details of an epic search for the requested records." *Perry*, 684 F.2d at 127.  Rather, "affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Id.*

Here, the Hardy declaration reflects that the FBI conducted an adequate search.  At the outset, Hardy attests that he is knowledgeable about the search and the processing procedures that were undertaken; and that his declaration is based upon his personal knowledge and made in his official capacity.  *See* Hardy Decl., ¶ 2.  He then identifies and details the record systems and locations used for each of the searches, why the relevant information would be in those locations and systems, the search terms used, and the scope of the searches.  *See id.*, ¶¶ 44–58.  More specifically, Hardy states that the FBI conducted a search of the CRS for potentially responsive

records by using variations of Bolze's name.  *Id.*, ¶ 56, 56 n.24.[9]  The methodology of each

search, and results relating thereto, are thoroughly explained.  *See id.*, ¶¶ 54–58.  The FBI also

consulted with relevant individuals and other agencies, including the United States Department

of Housing and Urban Development, *id.*, ¶ 37, and the FBI Special Agent who was assigned to

Bolze's criminal investigation, *id.*, ¶ 57.  These coordinated searches yielded 5,940 pages of

responsive records, including the very documents requested by Bolze.  *Id.*, ¶¶ 5, 41, 78, 56.

      The efforts described by the Hardy Declaration were plainly adequate: They not only

were "reasonably likely" to locate records responsive to Bolze's request, but they did, in fact,

locate all the relevant records.  *See* Hardy Decl., ¶¶ 46, 56–58.  The Court has reviewed the

Declaration and concludes that it sufficiently details the scope and method of the search

conducted by the FBI.  *See Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015) ("[A] search is

generally adequate where the agency has sufficiently explained its search process and why the

specified record systems are . . . reasonably likely to contain responsive records.") (citation

omitted).  Bolze is not entitled to the degree of "specificity and clarity" in the Declaration that he

demands, particularly where the information in the Declaration conclusively shows that all

responsive records were located and processed.

## 2.  Number of Search Terms

      Bolze next argues that the search was inadequate because the FBI used only "three search

terms."  *See* Pl. Mot. at 6–11.  That argument appears to misunderstand what occurred.  The FBI

did not merely use "three search terms;" it instead conducted a three-way phonetic breakdown of

---

[9]      A search of the CRS is reasonably calculated to uncover responsive documents.  *See, e.g.*, *Rosenberg v. U.S. Dep't of Immgr. & Customs Enf't*, 13 F. Supp. 3d 92, 102–05 (D.D.C. 2014) (concluding that it was proper for the FBI to consider CRS search results to determine whether "it had searched all locations where potentially responsive records were reasonably likely to be located").

Bolze's name variants, which then populated various other search results.  *See* Hardy Decl., ¶ 56, 56 n.24.[10]  The FBI also searched by date of birth and social security number, among other data points.  *Id.*, ¶¶ 49, 56.  Bolze argues that the FBI should have used more terms as identified in his definition of "paper documents," such as "Michael Potter, CAM, or ATS[.]"  *See* Pl. Reply at 18. He speculates that using these terms would have revealed additional documents.  In support of that claim, he points to what he believes to be a single "missing page" of a letter, specifically, Bates No. 4557.  *See id.*

Bolze's argument lacks merit because the FBI conducted a search that was responsive to his request for information:  He requested only documents "seized during [his arrest] on or about March 12, 2009 at 1323 Torbert Lane located in Jersey Shore, Pennsylvania."  *See* Compl. Appx. at 001, 016, 022; Hardy Ex. B.  The FBI performed a search that located the requested records. *See* Hardy Decl. ¶ 56.  "Agencies . . . need not expand their searches beyond 'the four corners of the request,' nor are they 'required to divine a requester's intent.'"  *Am. Chemistry Council, Inc. v. HHS.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) (quoting *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003)).  Moreover, Bolze's own search preferences cannot dictate the reasonableness of the scope of an agency's FOIA search.  *See Mobley*, 806 F.3d at 582 (allowing

---

[10]    "The FBI search consisted of a three-way phonetic breakdown of Mr. Bolze's names."  *Id.*, ¶ 56.

          This means that first; the computer automatically broke his name down and searched the index for different name breakdowns of the name entered: 'Bolze, Dennis, Roger,' 'Bolze, Dennis, R,' and 'Bolze, Dennis.'  Then, the computer broke names down based on their phonetic characteristics.  The computer would return results based on whether or not they phonetically match a certain percentage of the first and last names searched.

*Id.*, ¶ 56 n.24.

a "requester to dictate, through search instructions, the scope of an agency's search" would undermine "the reasonableness test for search adequacy long adhered to in this circuit").

       3.   <u>Scope of Search</u>

      Bolze argues that the FBI's search was inadequate because the FBI committed a "narrowing error" and inadvertently released some non-responsive records.  *See* Pl. Mot. at 8–15. But the "narrowing error" appears to be a "widening" one — Bolze contends that the FBI, at times, failed to limit its search parameters.  *See id.*  The apparent argument that Bolze received *too many* records is incongruous in the context of a FOIA request; and the claim contradicts his contention that the search was insufficient.  If anything, Bolze's argument suggests that he received a more complete view of his investigative file than was warranted by his request.  Thus, even if the FBI mishandled Bolze's request, the asserted error did not prevent Bolze from receiving the appropriate documents.  *See Gold Anti–Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 133 (D.D.C. 2011) (dismissing plaintiff's argument that an expanded search was inadequate and holding that "[w]hile these facts could indicate" that the searches were "overbroad, they do not serve to undermine the adequacy . . ." of the searches).

       4.   <u>Bad Faith</u>

      Bolze's final challenge to the FBI's search is based on broad allegations that the FBI and the EOUSA, in concert with other agencies, acted in bad faith "to impair or impede [his] access to its line prosecutor's suppression of *Brady* material over the past eleven years."  *See* Pl. Reply at 14.  He believes that overcharges of processing fees, delays, alleged failures in service of process, and transfer of his requests between different agency units, constitute ongoing collusion.

*See id*. at 8–16; Pl. Mot. at 11–16.  While the Court acknowledges that Defendants were somewhat disorganized in their handling of Bolze's requests, the record does not support Bolze's theory of a decades-long, overarching DOJ conspiracy.

First, "[c]ourts routinely find that delays in responding to FOIA requests are not, in and of themselves, indicative of agency bad faith."  *Skurow v. DHS*, 892 F. Supp. 2d 319, 326 (D.D.C. 2012) (one-year delay insufficient for finding agency bad faith; claims of bad faith were purely speculative); *see also Competitive Enter. Inst. v. NASA*, 989 F. Supp. 2d 74, 88–89 (D.D.C. 2013) (two-year delay not caused by bad faith); *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978) ("[I]n view of the well-publicized problems created by the statute's 10– and 20–day time limits for processing FOIA requests and appeals, the CIA's delay alone cannot be said to indicate an absence of good faith.") (footnote omitted).

Second, any overcharges of processing fees do not indicate bad faith, for the FBI made efforts to review the charges and refunded the third parties for their overpayment.  *See* Hardy Decl., ¶¶ 38–42.[11]  Finally, there is no basis to question Hardy's attestation that the FBI simply made an error in failing to narrow its search after Bolze attempted to amend his request.  *See id.*, ¶ 39.  Given the ongoing nature of the search, it is plausible that the FBI accidentally continued

---

[11]    With respect to the alleged overcharges of processing fees, the FBI responds as follows:

> In his motions, Plaintiff notes his attempt to narrow the scope of his request slightly in his October 12, 2017 letter.  As such, Plaintiff avers the FBI provided approximately 2,032 pages of non-responsive material to Plaintiff.  The FBI has researched this issue and determined that based on Plaintiffs narrowing, it had inadvertently provided non-responsive material in the second, third, fourth, fifth, tenth, and eleventh interim releases in this case totaling 1,052 pages.  Based on the FBI's analysis, it owed $69.62 for fees associated with non-responsive material.  On October 23, 2019, the FBI submitted refunds to the two individuals who previously paid on Plaintiff's behalf via its pay.gov system in the amount of $34.81 for each person.

*See* Hardy Decl., ¶ 39 (internal citations omitted).

to use the broader parameters of Bolze's initial request, *see* Hardy Ex. A, while failing to exclude documents that became nonresponsive after his October 2017 modification, *see* Hardy Ex. E. The Court is unable to find bad faith on this record.

      *b.  USAO-EDTN's Search*

The record also reflects an adequate search by the USAO-EDTN, which was the office that prosecuted Bolze's criminal case, No. 3:09-CR-93.  *See* Watson Decl., ¶ 5.  Kitty Watson, a paralegal employed by the USAO-EDTN, personally handled Bolze's request for information. *Id.*, ¶ 1.  She attests that the USAO-EDTN was the appropriate component to conduct the search, *see id.*, ¶ 1.

Watson determined that the case file was administratively closed in 2012.  *Id.*, ¶ 5.  She personally searched for the available closed files, if any, corresponding to Bolze's case, No. 3:09-CR-93, and two related appeals.  *Id.*  Watson located four Internal Revenue Service ("IRS") investigative memoranda.  *Id.*, ¶ 5.  Those memoranda indicated that any responsive financial records had been seized by an IRS Special Agent and an FBI Special Agent, both of whom took possession of the documents.  *Id.*  There was no indication that those documents had ever been part of the USAO-EDTN case file.  *Id.*  Watson also consulted with the Assistant U.S. Attorney ("AUSA") who was assigned to Bolze's criminal investigation and prosecution, confirming that the AUSA was not in possession of any of the requested documents.  *Id.*, ¶ 7.  Watson attests that she personally searched every location where responsive materials could possibly be found, but that she did not locate any such materials.  *Id.*, ¶ 8.

Aside from Bolze's arguments alleging a bad faith conspiracy, *see* Pl. Mot. at 11–16, he offers nothing to contest the sufficiency of the USAO-EDTN's search.[12]   Although the shuffling of his request between the EOUSA and the USAO-EDTN may have delayed their response, the USAO-EDTN ultimately conducted an adequate search and, in fact, determined that the requested documents were likely in the custody of two other agencies, including the FBI.  *See* Watson Decl., ¶ 5.  As noted, *supra*, Bolze ultimately received the requested documents from the FBI.  Even assuming, *arguendo*, that the USAO-EDTN also once possessed the documents, the FOIA does not impose a duty on agencies to keep their records indefinitely, and a requester is only entitled to records that an agency has actually retained.  *Bonfilio v. OSHA*, 320 F. Supp. 3d 152, 157 (D.D.C. 2018) (citing *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) and *Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982)).  For all these reasons, the Court finds that the USAO-EDTN conducted an adequate and reasonable search for the requested records.

## II.   FOIA Exemptions & Segregability

The FBI relied on FOIA Exemptions 6 and 7(C) to justify its withholding of certain information.  *See* Hardy Decl., ¶¶ 63–77; Hardy Ex. CC (Vaughn Index) at A-1.  Bolze did not address Defendants' withholdings in his opposition/cross-motion for summary judgment, nor did he address the exemptions in his reply.  He argues instead that any issues regarding the

---

[12]      Bolze argues that, during his prosecution, the AUSA intentionally suppressed a 2006 investigative file compiled by the Commodity Futures Trading Commission ("CFTC"), which was purportedly seized by the FBI during his arrest, and which he believes will exonerate him.  *See* Pl. Reply at 6, 8–9, 14, 18–20.  He contends that the DOJ and its subcomponents are engaged in a scheme to withhold the CFTC file from him, in order to conceal the AUSA's prior alleged misdeeds.  *See id.*  But neither the USAO-EDTN nor the FBI was the originating agency of the CTFC file, and the file was purportedly used during litigation separate from his criminal prosecution.  *See* Pl. Reply at 8–9.  His claims thus do not cast doubt on the USAO-EDTN's assertion that it does not possess any responsive records.  *See Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1385 (8th Cir. 1985) (an agency "is not required by [the FOIA] to account for documents which the requester has in some way identified if it has made a diligent search for those documents in the places in which they might be expected to be found").

exemptions are moot because Defendants "defaulted" in the sufficiency of their search, and thus, he need not object to the propriety of the withholdings. *See* Pl. Reply at 16–19. Moreover, he does not ask that the Court compel the production of any of the redacted or withheld information. Because Bolze has failed to present any evidence to generate a genuine dispute of material fact concerning the invocation of the relevant FOIA Exemptions, the Court need not rule on the sufficiency of Defendants' evidence with respect to the withholding of responsive material under Exemptions 6 or 7(C), or the segregability of those materials. *See Shapiro v. DOJ*, 239 F. Supp. 3d 100, 105–06 n.1 (D.D.C. 2017); *see also Schaerr v. DOJ*, 435 F. Supp. 3d 99, 109–10 (D.D.C. 2020) (holding same).

## III.   Plaintiff's Requests for Reimbursement

Bolze seeks "reimbursement for litigation costs" pursuant to 5 U.S.C. § 552(a)(4)(E). *See* Pl. Mot. Reimb. at 1. The FOIA permits a district court to "assess against the United States . . . other litigation costs reasonably incurred in any case . . . in which the [plaintiff] has substantially prevailed." *See* 5 U.S.C. § 552(a)(4)(E)(i). A party substantially prevails if he has obtained relief "through . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *See* 5 U.S.C. § 552(a)(4)(E)(ii). "This provision codifies the so-called 'catalyst theory' of fee eligibility, under which 'FOIA plaintiffs [are] eligible for a fee award if the lawsuit substantially caused the agency to release the requested records,' regardless of whether the plaintiff obtained any court-ordered relief." *Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 231 (D.D.C. 2012) (quoting *Davis v. DOJ*, 610 F.3d 750, 752 (D.C. Cir. 2010)).

Bolze argues that "he has substantially prevailed because the Defendants failed to adhere to FOIA's requirements which forced him to file a civil action to obtain access to records and in which the Defendants would then default in their own search obligations." *See* Pl. Mot. Reimb. at 1–2.  He demands "reimbursement of $2,496.87" for filing fees, office supplies, mailing costs, and time spent reviewing productions. *Id.* at 2, 3; Pl. Mot. Reimb., Ex. A (Cost Breakdown.)

The Court preliminarily agrees that the filing of this litigation substantially caused Defendants to search for and release the requested records. *See Davis*, 610 F.3d at 752.  But a plaintiff who "substantially prevails" is only potentially "*eligible* for attorney's fees [and litigation costs]; whether the plaintiff is actually *entitled* to a fee award is a separate inquiry that requires a court to consider a series of factors." *Edmonds v. FBI*, 417 F.3d 1319, 1327 (D.C. Cir. 2005) (internal quotation marks, brackets and citations omitted) (emphasis in original).  The decision to award costs and fees is left to the Court's discretion. *See Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 705 (D.C. Cir. 1977) (commenting that § 552(a)(4)(E) "contemplates a reasoned exercise of the courts' discretion taking into account all relevant factors").  In making this decision, the Court considers "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (citations omitted).

Bolze argues that his FOIA requests attempted to pierce "the veil of administrative secrecy and to open agency actions to the light of public scrutiny and explained the nature of his interest to access favorable exculpatory *Brady* type materials withheld from the defense, by the Defendants, during his criminal prosecution." *See* Pl. Mot. Reimb. at 2.  That argument,

however, fails to identify a public benefit.  Bolze's interest in the documents and intended use of them are solely personal.  "When a litigant seeks disclosure for . . . personal reasons, an award of fees is usually inappropriate."  *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995); *see also Davy*, 550 F.3d at 1160 (observing that plaintiffs who "seek documents for private advantage . . . cannot deserve a subsidy as they benefit only themselves and typically need no incentive to litigate").  Moreover, because Bolze has not contested the FBI's claimed Exemptions, any request for litigation costs may be summarily denied.  *See Schotz v. Samuels*, 72 F. Supp. 3d 81, 92 (D.D.C. 2014) (denying litigation costs where the plaintiff did not contest any claimed exemptions, and where the Court found the exemptions properly supported).

The remainder of Bolze's claimed fees — for time spent on tasks such as "reviewing release/withheld records," *see* Pl. Mot. Reimb Ex. A, — are essentially attorney's fees.  As a *pro se* plaintiff who is not an attorney, Bolze is not eligible for attorney's fees under 5 U.S.C. § 552(a)(4)(E), *see Benavides v. Bureau of Prisons*, 993 F.2d 257, 259 (D.C. Cir. 1993), and even represented litigants generally cannot recover fees for review of responsive FOIA documents, *see Am. Immgr. Council v. DHS*, 82 F. Supp. 3d 396, 412 (D.D.C. 2015) ("Plaintiff is not entitled to recover for time spent reviewing the documents it instituted [a] lawsuit to obtain.") (citation omitted).  Consequently, the request for reimbursement for time spent on document review will be denied.

Bolze also seeks to recover his document processing fees.  *See* Pl. Mot. Reimb. Ex. A. Bolze asserts that the the FBI overcharged him by $135.00 because the agency processed records that were beyond the scope of his request.  *See* Pl. Mot. at 9.  Specifically, Bolze argues that the FBI ignored his attempt to narrow his request in his October 12, 2017, letter, instead producing

approximately 2,032 pages of non-responsive material.  *See id.* at 9–10, 17.  In his motion for reimbursement, Bolze requests a refund for $243.22, which represents the total amount of processing fees that he expended.  *See* Pl. Mot. Reimb. Ex. A.

The FBI has acknowledged that it committed an administrative error in failing to honor Bolze's attempt to narrow his request; and the agency thus inadvertently provided some non-responsive material.  *See* Hardy Decl., ¶ 39.  The agency attempted to remedy this error on October 23, 2019, by providing refunds to two individuals who paid processing fees on Bolze's behalf.  *See id*.; *see also supra*, n.11.  In his reply, Bolze does not present any evidence or argument that the reimbursements to the third parties were insufficient to address the FBI's error. The Court therefore concludes that there is no dispute of material fact regarding the propriety of the document processing fees.

## CONCLUSION

For the foregoing reasons, the Court concludes that Defendants conducted reasonable and adequate searches for materials responsive to Bolze's FOIA and PA requests.  Accordingly, the Court will grant Defendants' motion for summary judgment and will deny Bolze's cross-motion for summary judgment.  The Court further concludes that Bolze is not entitled to reimbursement of his fees and costs and therefore will deny his motion for reimbursement.  A separate Order will issue this day.


Date:   November 29, 2021


_____
Florence Y. Pan
United States District Judge

21